IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v.                                    Case No.: 24-cr-28-wmc

DAVID SWARTZ,

          Defendant.

---

### PLEA AGREEMENT

---

1. This is the proposed plea agreement between the defendant and the United States in the above-captioned case.

2. **PLEA AND PENALTIES:** The defendant agrees to waive indictment and plead guilty to the two-count information filed by the United States Attorney's Office. Count 1 charges a violation of 18 U.S.C. § 1343, which carries maximum penalties of 20 years in prison, a $250,000 fine, a three-year period of supervised release, a $100 special assessment, and the entry of an appropriate restitution order. Count 2 charges a violation of 26 U.S.C. § 7206(2), which carries maximum penalties of three years in prison, a $250,000 fine, a one-year period of supervised release, a $100 special assessment, an appropriate restitution order, and costs of prosecution. In addition to these maximum penalties, any violation of a supervised release term could lead to an additional imprisonment term pursuant to 18 U.S.C. § 3583. The defendant agrees to pay the special assessment at or before sentencing and understands that the Court will enter an order requiring the immediate special assessment payment under 18 U.S.C. § 3013. In an appropriate case, the defendant could be held in contempt of court and receive an additional sentence for failing to pay the special assessment.

3. **RIGHTS WAIVED BY PLEADING GUILTY:** The defendant acknowledges by pleading guilty, that he is giving up these rights: (a) to plead not guilty and to persist in that plea; (b) to a jury trial; (c) to be represented by counsel – and if necessary to have the Court appoint counsel – at trial and at every other stage of the trial proceedings; (d) to confront and cross-examine adverse witnesses; (e) to be protected from compelled self-incrimination; (f) to testify and present evidence; and (g) to compel the attendance of witnesses.

4. **IMMIGRATION CONSEQUENCES:** The defendant understands that upon conviction, if he is not a United States citizen, he may be removed from the United

States, denied citizenship, and denied future admission to the United States. The defendant nevertheless affirms that he wants to plead guilty regardless of any removal and immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

5. **FACTUAL BASIS:** The defendant agrees that the following facts are true, correct, and that, if this case were to proceed to trial, the government would be able to prove these facts beyond a reasonable doubt. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described herein.

During the timeframe alleged in the information, the defendant was an unregistered investment advisor and fund manager, based in Highland Park, Illinois. The defendant operated the North Shore Alternative Strategies Fund, L.P. (NSAS) and represented to "Victim-1" that NSAS was comprised of conservative investments and the value of the fund was steadily growing over time. Victim-1 was a resident of Madison, Wisconsin.

Victim-1 made periodic investments into NSAS between January of 2009 and March of 2020 with the understanding that the defendant was conservatively investing the money. In truth, the defendant was pursuing a strategy that included trading in certain risky options and on margin, and comingling NSAS funds with at least two other investment funds that he either traded or managed.

As part of the scheme to defraud Victim-1, the defendant routinely misrepresented the financial performance of NSAS to Victim-1. For example, during 2018, NSAS suffered a total loss of approximately 23%, or $1,800,000. Despite this loss, on January 29, 2019, the defendant sent an email to Victim-1 stating that NSAS "had an incredibly great 2018" and was "solidly profitable for the year[.]"

In February of 2020, the defendant engaged in a series of trades, including buying and selling Tesla options, and incurred over $5,000,000 in losses. Nonetheless, on March 1, 2020, the defendant sent an email to Victim-1 and stated that NSAS had suffered only "minimal" losses in February and persuaded Victim-1 to invest another $150,000 in NSAS. The following day, March 2, 2020, Victim-1 invested an additional $150,000 in NSAS.

On March 18, 2020, the defendant emailed Victim-1 a purported copy of a Charles Schwab account statement for NSAS ("NSAS account") for the statement period ending on December 31, 2019. The Charles Schwab statement had been altered by the defendant to reflect that the total value of the NSAS account on December 31, 2019, was $1,017,191.92. However, the actual value of the NSAS account on December 31, 2019, was $58.27.

On March 7, 2020, the defendant knowingly provided a false and fraudulent Schedule K-1 for tax year 2019 to Victim-1 that showed that Victim-1's net short-term

capital gain from his investment in NSAS exceeded $500,000. In fact, the defendant knew that Victim-1 did not have capital gains from NSAS in 2019 but instead incurred significant capital losses. On October 12, 2020, Victim-1's U.S. Individual Income Tax Return, Form 1040, for the 2019 tax year was electronically signed and filed in Madison, Wisconsin. That tax return was false and fraudulent as to a material matter because the Form 1040 substantially overreported Victim-1's capital gains on Schedule D, Line 5. The defendant knew that the Form 1040 overinflated Victim-1's Schedule D income because he provided false and fraudulent information regarding the profitability of NSAS in 2019, which he knew Victim-1 would report on his Form 1040 thereby causing Victim-1 to report owing an unjustified amount of federal income tax.

Madison, Wisconsin, is within the Western District of Wisconsin.

This information is provided to establish a factual basis for the defendant's guilty plea. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

6. **SCOPE OF RESOLUTION:** The United States agrees that this guilty plea will completely resolve all possible federal criminal violations that have occurred in the Western District of Wisconsin provided that two conditions are met: (a) the criminal conduct relates to the conduct described in the information; and (b) the criminal conduct was known to the United States as of the date of this plea agreement. This agreement not to prosecute is limited to those types of cases for which the United States Attorney's Office for the Western District of Wisconsin has exclusive decision-making authority. The defendant also understands that the United States will make its full discovery file available to the Probation Office for its use in preparing the presentence report.

7. **FRAUD LOSS:** The parties agree that the loss amount under U.S.S.G § 2B1.1(b)(1) for Count 1 is $150,000.

8. **ACCEPTANCE OF RESPONSIBILITY:** The United States agrees to recommend that the Court, in computing the advisory Sentencing Guideline range, and in sentencing the defendant, gives the defendant the maximum available reduction for acceptance of responsibility. This recommendation is based upon facts currently known to the United States and is contingent upon the defendant accepting responsibility according to the factors set forth in USSG § 3E1.1. Further, the United States' agreement to recommend a reduction for acceptance of responsibility is also based on the defendant providing a full and truthful accounting in the required financial statement and, if applicable, the defendant's efforts to make immediate restitution payments. The United States is free to withdraw this recommendation if the defendant has previously engaged in any conduct that is unknown to the United States and is inconsistent with acceptance of responsibility, or if he engages in any conduct between the date of this plea agreement and the sentencing hearing, which is inconsistent with acceptance of

responsibility. This recommendation is consistent with the defendant signing this plea agreement on or before February 29, 2024.

9. **RESTITUTION:** The defendant agrees to pay restitution for all losses relating to the offense of conviction and all losses covered by the same course of conduct or common scheme or plan as the offense of conviction. The defendant further agrees that the full amount of restitution is due and payable immediately. The defendant acknowledges that immediate payment means payment in good faith from the liquidation of all non-exempt assets beginning immediately.

10. **FINANCIAL STATEMENT:** The defendant agrees to complete the attached financial statement and return it to this office within one week of the guilty plea hearing. The defendant agrees that this financial statement will be a full and truthful accounting, including all available supporting documentation. The defendant authorizes the United States Attorney's Office to run the defendant's credit report. The defendant also agrees that the probation office may disclose to the United States all financial statements to be completed by the defendant in connection with the preparation of the presentence report, together with all supporting documents.

11. **SENTENCING DISCUSSIONS:** Other than agreements specifically set forth in this plea agreement, the defendant understands that sentencing discussions are not part of the plea agreement. The defendant should not rely upon the possibility of a particular sentence based upon any sentencing discussions between defense counsel and the United States, other than those memorialized in this plea agreement.

12. **SENTENCING RECOMMENDATIONS:** The defendant acknowledges his understanding the United States has made no promises or guarantees regarding the sentence that will be imposed. The defendant also acknowledges his understanding that the Court may not accept the recommendations, which may be made by the United States, and that the Court can impose any sentence up to and including the maximum penalties set out above.

13. **VOLUNTARINESS OF PLEA:** The defendant acknowledges that no threats, promises, representations, or agreements exist, other than those set forth in this agreement, to cause the defendant to plead guilty. The defendant acknowledges that he has read this agreement, has carefully reviewed it with his attorney and understands and voluntarily accepts all its terms.

14. **THIS IS THE ONLY PLEA AGREEMENT:** By our signatures below, the defendant and defense counsel acknowledge that this is the only plea agreement in this case.

2-29-24
Date

TIMOTHY M. O'SHEA
United States Attorney

By: _____
AARON WEGNER
Assistant United States Attorney

2-29-2024
Date

_____
JOHN GALLO
Attorney for the Defendant

2/28/24
Date

_____
DAVID SWARTZ
Defendant

## ACKNOWLEDGEMENTS

I, DAVID SWARTZ, am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed the entire agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney, including the charges against me, the elements of those charges, and possible defenses. I am satisfied that my attorney has provided effective assistance of counsel.

2/28/24
Date

_[signature]_
DAVID SWARTZ
Defendant

I am the defendant's attorney. I have reviewed this agreement carefully with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

2/29/2024
Date

_[signature]_
JOHN GALLO
Attorney for Defendant